SELF *v.* TAYLOR.

5-575                                    275 S. W. 2d 21

Opinion delivered January 31, 1955.

[Rehearing denied February 28, 1955.]

*Bailey, Warren & Bullion,* for appellant.

*Bethell & Pearce,* for appellee.

GRIFFIN SMITH, Chief Justice.   The appeal is from action of the court in declining to vacate an anti-picketing injunction laid in 1950. The decree was affirmed December 11. *Self v. Taylor,* 217 Ark. 953, 235 S. W. 2d 45.

Evidence influencing the former decision was conclusive of the proposition that Electrical Workers, Local No. 700, had undertaken through coercive measures to compel Leon E. Taylor Electric Company (a business individually owned by Taylor) to contract with the union in circumstances showing that the purpose was to procure an agreement that did not, by any written expression, preclude the employer from utilizing non-union men, but the unexpressed intent was to refrain from working with any who did not belong to the organization. In the opinion this paragraph appears:

"The contract itself, the circumstances of its proposal, the constitution of the international union (which forbids union members from working on the job with non-union men) as made in effect a part of the contract, the testimony of union representatives that their members would not work under the contract if non-union members were employed—all of these things must be considered in deciding whether the finding of the Chancellor as to the purpose of picketing is supported by the evidence. Unless we blind ourselves to reality it is apparent that a closed shop is the union's objective in picketing."

We agree with appellant that an injunction may be modified or vacated after lapse of the term. See *Local Union No. 656 et al* v. *Thompson, Trustee,* 221 Ark. 509, 254 S. W. 2d 62. We have also said that the right to strike (insofar as legal restrictions may operate) is absolute, and within reasonable limitations the right to picket is protected by the state with the same impartial considerations that sustain the employer's freedom in conducting a lawful business in a legitimate manner.

In asking that the injunction be dissolved appellant insists that conditions have materially changed. It is also the union's position that with the injunction in effect it is unable to negotiate with Taylor on equal terms.

Self is business representative for Local Union No. 700, International Brotherhood of Electrical Workers. The union has four contracts in Ft. Smith and operates in seventeen North West Arkansas counties. It has slightly modified contracts which the court found four years ago were made with unexpressed reservations that Act 101 of 1947 would be shunted should the equal rights concept actuating Amendment No. 34 be applied in practice by the employer.

In March, 1954, new contracts were prepared before expiration of the old ones. Employers who had union agreements appear to have acquiesced in this mid-term

procedure, but no proposal has been made to Taylor. The Chancellor expressly found that his injunction did not affect friendly negotiations, and the inference is clear that union representatives are at liberty to meet with Taylor, or at least to undertake negotiations, and proceed in all respects as though no injunction existed, except that they may not picket to influence action.

It is true that the court found from testimony that the International Brotherhood's constitution and by-laws prohibit union men from working with non-union employes, and further, that a contract made at this time which did not exclude employment of non-union workers was not susceptible of enforcement by Local No. 700. Hence, if Taylor should consummate negotiations and sign a contract such as the one now proposed, and then should exercise the rights conferred by Amendment No. 34 and Act 101, union protection against a walkout would be negligible. But no lawful contract has been proposed directly to Taylor. We therefore agree with the Chancellor that there is nothing in the injunction to prevent the union from negotiating on an equal footing.

Affirmed.

Mr. Justice GEORGE ROSE SMITH, Mr. Justice WARD, and Mr. Justice ROBINSON, dissent.

GEORGE ROSE SMITH, J., dissenting. Almost five years ago a labor dispute arose between these parties. In the course of that dispute the union insisted, at first openly and later by subterfuge, upon the execution of a closed shop contract. When that illegal demand was bolstered by the establishment of a picket line the chancellor issued the injunction now in controversy. That order, affirmed by this court, ended the labor dispute with a victory for the employer.

Now, several years later, the union wishes to negotiate for a contract admittedly lawful. Since peaceful picketing is labor's principal, if not only, sanction for the enforcement of its valid demands, these appellants ask

permission to be free to picket if they deem it necessary in the course of negotiating for a collective bargaining agreement. They are unwilling to open negotiations while the parties occupy unequal positions, the employer knowing that the union cannot resort to the main weapon usually at its disposal. The question is whether the injunction should now be dissolved. I can find no sound reason for refusing that relief.

There are only two matters in the record that give any semblance of support to a continuance of the injunction. The first is that provision in the international union's constitution and by-laws which advocates the closed shop. This matter is completely irrelevant to the case at bar. A closed shop is illegal in Arkansas, but that fact certainly does not prevent a labor organization from openly favoring the closed shop idea or even from doing all it can to have the law changed. Here the local union, even though its members may endorse the closed shop theory, is not now seeking to obtain that type of contract. Our inquiry is limited to what the appellants are doing, not what they are thinking.

Second, certain testimony given by the union's business agent, T. F. Self, was stressed by the chancellor. Self testified that the union intended to abide by the law and that if Taylor should employ non-union men the union would not, for that reason, either order its members to cease work or picket the employer. Upon further questioning, however, Self in substance conceded that he could give no assurance as to the individual attitude of the union men in the situation supposed. He said that the men had a right to their personal opinions, and that whether they would work with a non-union organization was left up to them. It is this latter testimony that was emphasized by the chancellor.

The position taken by the union members is perfectly proper and, indeed, was so recognized by us upon the prior appeal. We then said: ''They [appellants] further argue that no man can be forced to work with non-union men, and if for any reason they want to cease their em-

ployment they have a right to do so. This latter contention is patently true. . . ." *Self* v. *Taylor*, 217 Ark. 953, 235 S. W. 2d 45. Thus Self's testimony amounts simply to a concession that the union members still adhere to a belief that in no way offends the laws of Arkansas.

It is, of course, well settled that the right to picket peaceably is protected by the constitutional guaranty of free speech, now relied upon by the appellants. There is in the case at bar no element of illegality that would call for the issuance of an injunction in the first instance. The refusal to lift the restraint amounts to a declaration that the right of these appellants to free speech will be withheld until they abandon perfectly lawful beliefs and adopt an attitude of mind more acceptable to management. I am unable to believe that a constitutional provision which was meant to encourage and to protect diversity of belief can properly be used as a means of compelling uniformity of thought. In my opinion the appellants are being denied their rights under the Fourteenth Amendment.